## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**RODNEY D. ZEUNE,**

      **Petitioner,**                          **CASE NO. 2:14-cv-1459**

**v.**                                  **JUDGE ALGENON L. MARBLEY**
                                                **Magistrate Judge Kemp**

**WARDEN, FRANKLIN MEDICAL**
**CENTER,**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, formerly a state prisoner, filed this habeas corpus action pursuant to 28 U.S.C. §2254, challenging a conviction entered in the Franklin County Court of Common Pleas. On April 17, 2015, this Court denied Respondent's motion to dismiss and granted Petitioner leave to file an amended petition, which was filed that day. The case is now before the Court by way of that petition (Doc. 13), the Return of Writ (Doc. 14), Petitioner's reply (Doc. 16), Petitioner's motion for an evidentiary hearing, and the exhibits attached to Respondent's motion to dismiss (Doc. 8). For the following reasons, it will be recommended that the motion for an evidentiary hearing be denied and that this case be **DISMISSED**.

### I.  Procedural History

On August 18, 2009, the Franklin County, Ohio grand jury indicted Petitioner on one count of trafficking in cocaine. (Doc. 8, Ex. 2). He stood trial before a jury, and on October 22, 2010, the jury convicted him. He was then sentenced to four years in prison and was

ordered to pay a fine and financial sanction totaling $6,000.00.  He was also ordered to serve up to three years of post-release control.  (Ex. 5).

Through counsel, Petitioner timely appealed his conviction to the Tenth District Court of Appeals.  His appellate brief raised four assignments of error:

> FIRST ASSIGNMENT OF ERROR: Rodney Zeune was deprived of his constitutional rights to the effective assistance of counsel.

> SECOND ASSIGNMENT OF ERROR: The trial court erred when it failed to *sua sponte* order a mistrial.

> THIRD ASSIGNMENT OF ERROR: The trial court denied Mr. Zeune due process when it imposed a sentence punishing him for exercising his right to a jury trial.

> FOURTH ASSIGNMENT OF ERROR: The trial court erred when it imposed an unlawful sentence.

(Ex. 7).  He raised an additional assignment of error in his reply and supplemental brief, claiming that the jury was not properly instructed about the affirmative defense of entrapment.  (Ex. 13).

The court of appeals decided the appeal on October 6, 2011.  It overruled Petitioner's first, second, third, and fifth assignments of error, but remanded the case for resentencing based on the fourth assignment of error.  *State v. Zeune*, 2011 WL 4600663 (Franklin Co. App. Oct. 6, 2011).  On February 6, 2012, the trial court resentenced Petitioner to the same sentence he originally received.  (Ex. 20).  Petitioner again appealed, and also (acting *pro se*) filed a motion to vacate his sentence  He did not fare as well this time; the court of appeals affirmed the re-imposed sentence and denied the motion to vacate.  *State v. Zeune*,

2012 WL 5947016  (Franklin Co. App. Nov. 27, 2012).  It also denied a motion for reconsideration.  (Ex. 32).

While the appellate process was ongoing, Petitioner was also pursuing relief in the trial court through a motion to vacate and set aside his conviction and sentence, filed pursuant to R.C. §2923.51.  He asserted that counsel was constitutionally ineffective and that the prosecutor withheld exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  His petition was denied on February 7, 2013.  (Ex. 37).  Petitioner appealed that decision as well, but on September 24, 2013, the court of appeals affirmed the trial court's ruling and denied another motion to vacate which Petitioner had filed.  *State v. Zeune*, 2013 WL 5406895 (Franklin Co. App. Sept. 24, 2013).  Petitioner sought review of that decision by the Ohio Supreme Court, raising all three issues addressed by the state court of appeals, but he was unsuccessful in obtaining it.  *State v. Zeune*, 137 Ohio St.3d 1477 (Jan. 22, 2014).

Eleven days before that decision was rendered, Petitioner filed another motion to set aside his conviction and order resentencing, this time in the trial court.  The trial court denied that motion as well as a subsequent motion asking for the same relief.  (Ex. 60. Ex. 63).  Petitioner had no better luck with a habeas corpus petition which he filed directly with the Ohio Supreme Court.

In his original habeas corpus petition, which he filed here on September 8, 2014, Petitioner asserted these  grounds for relief:

**Ground one:** My sentence and conviction is void and/or voidable because

3

the State withheld exculpatory evidence and thus violated my due process rights at trial.  Fifth and fourteenth amendments to the U.S. Const. And Ohio Const.

**Ground two:** My conviction is void because I was denied the right to effective assistance of counsel at trial under the Sixth and Fourteenth Amendments of the United States Constitution.

**Ground three:** My resentencing hearing was and sentence was unlawful because I was sentenced outside the statutory guidelines of section 2929.14 of the Ohio Revised Code for a Felony of the Third Degree.

*Petition*, Doc. 4.

Respondent moved to dismiss the petition, arguing that ground three was unexhausted because it was never presented to the Ohio Supreme Court and Petitioner still had available to him the remedy of a delayed direct appeal.  Petitioner responded by moving  to amend or correct his petition to delete his third ground for relief or, alternatively, to stay the case until he had exhausted that claim.  Because ground three related solely to Petitioner's sentence, and because he had been released from custody by the time Respondent's motion was filed, the Court permitted Petitioner to abandon that claim (and also denied his motion to stay this case pending exhaustion of that claim).  Thus, only grounds one and two are now before the Court.  Respondent contends that ground two has been procedurally defaulted in part, and that the part which was not defaulted is meritless.  Respondent also argues that ground one should be denied on its merits.  The Court will address Petitioner's claims in that order, first setting out the relevant facts of the case as described by the Tenth District Court of Appeals.

## II. The Facts

In its October 6, 2011 Opinion, the state court of appeals stated the facts this way:

> At trial, Ayman Musleh testified that he and appellant had been friends for
> years. He and appellant often used cocaine together and Musleh sometimes
> bought cocaine from appellant. In 2009, Musleh became a confidential
> informant for the Mt. Vernon Police Department after he was arrested on a
> drug possession charge. Musleh agreed to do a "controlled buy" of cocaine
> from defendant who was a "person of interest" in a Drug Enforcement
> Agency ("DEA") task-force investigation. Sometime thereafter, Musleh
> arranged to buy an ounce of cocaine from appellant. On March 5, 2009, after
> appellant changed the meeting location several times, Musleh and appellant
> met at a Staples office supply store and then immediately drove in Musleh's
> car to an apartment complex near the Columbus airport. Authorities had
> wired Musleh's car with a listening device so they could hear what
> transpired. On the way to the apartment complex, appellant called Rayshon
> Alexander to tell him they were on their way. Shortly after arriving at the
> apartment complex, Alexander approached the vehicle. Musleh gave
> appellant the money to buy the cocaine and then appellant gave that money
> to Alexander. Alexander gave the cocaine to appellant, who handed it to
> Musleh. Musleh and appellant then drove away.

*State v. Zeune*, 2011 WL 4600663, *1.

Some additional facts appear in the September 24, 2013 Opinion. For example, the court of appeals added this to the above description of the crime itself: "On the way back to appellant's vehicle, appellant snorted some of the cocaine. Musleh's car had been wired by police investigators so they could listen to what transpired." *State v. Zeune*, 2013 WL 5406895, *1. The court also noted that "[d]uring the trial, it was disclosed that police had certain tape recordings of telephone calls from Musleh to appellant, including those in which they set up the drug deal, which were not turned over to appellant and his trial counsel during discovery." *Id.* Also pertinent are these findings made by the trial court,

quoted at *id.*, *5:

> Here, [appellant] had previously used cocaine with Musleh. [Appellant] knew the source of the cocaine. [Appellant] directed Musleh to several locations before finally taking him to his source of the drug. [Appellant] "snorted" cocaine during the return trip following the purchase. [Appellant] had sold cocaine to Musleh on previous occasions. There is no evidence that [appellant] was reluctant to arrange the sale of cocaine. The audio recording of the conversation between [appellant] and Musleh while in Musleh's car showed [appellant's] knowledge of cocaine trafficking. Thus, even if there were evidence that the recordings of telephone conversations between Musleh and [appellant] actually contained a promise by Musleh to repay money [appellant] now claims was owed to him, the totality of the evidence shows no "reasonable probability" that the result of the trial would be different.

### III.  Procedural Default

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. Procedural default can be a fairly complicated doctrine, involving a number of court-made rules and exceptions, but the basic premise is simple and is reflected in the language Congress has used in 28 U.S.C. §2254.

Under §2254, a federal court may grant relief to a state prisoner only if that person is being held in custody in violation of the Constitution or law of the United States - that is, that the prisoner's conviction or sentence was unlawful under federal law. In order for a federal court to decide any claims on their merits, "the state prisoner must give the state

courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). That is so because §2254(b) states that an application for a writ of habeas corpus filed by someone in petitioner's position "shall not be granted" unless "the applicant has exhausted the remedies available in the courts of the State...."

One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [petitioner's] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v.. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state

ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the Petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

In his second ground for relief, Petitioner raises the issue of ineffective assistance of trial counsel.  He raised such a claim in his post-conviction petition (Ex. 34), arguing that counsel was ineffective for failing to investigate Petitioner's claim that he was entrapped by Mr. Musleh, who, he claimed, owed him $4,500 which was to be repaid on the date of the cocaine transaction, and by failing to determine that the police were in possession of recorded telephone conversations verifying Petitioner's claim of entrapment.  The trial court found that the two-pronged test for evaluating assertions of ineffective assistance of counsel set out in *Strickland v. Washington*, 477 U.S. 668 (1984) had not been met because the entrapment defense was meritless; therefore, Petitioner could not have been prejudiced by any action of his counsel in terms of presenting or not presenting the defense to the jury. The trial court also determined that any part of this claim which was raised on direct appeal - specifically, any assertion that counsel's performance during the trial was deficient - was barred by *res judicata*.  (Ex. 37).

In his amended petition (Doc. 13), Petitioner describes his second ground for relief

8

as follows:

> During trial, it was discovered that the State and law enforcement wilfully withheld exculpatory evidence. My trial counsel submitted a request for discovery outlining my demand for the same evidence that law enforcement admitted to withholding. My trial counsel did not move for the evidence or (sic) did he demand a mistrial for a Brady violation. The State of Ohio clearly violated Rule 16 of the Ohio Rules of Criminal Procedure. Rather than demanding the discovery, my trial counsel informed me that he worked with the prosecutor for sixteen years, which is part of the record. He said it would not be in my best interest to demand the evidence because this demand would only irratate (sic) his friend, the prosecutor. My trial counsel informed me that just because evidence requested fall under discovery rules, does not entitle you to such evidence.

He acknowledged that he had raised a claim of ineffective assistance of trial counsel on appeal, but asserted that this was not the same claim "because even though the Brady violation was in the record, by (sic) counsel informed me the evidence was not part of the record." *Id.* at 8. His original petition phrased the claim slightly differently, alleging that his trial attorney was ineffective because he failed to call any witnesses and did not file a witness list. (Doc. 4).

It is not clear whether Petitioner has withdrawn or abandoned that portion of this claim which relates to the failure to call witnesses. He does not mention that claim in his reply. Such a claim appears on the face of the record, and, as Respondent points out, was required to be raised on direct appeal in order to avoid a procedural default. The Court concludes that a fair reading of Petitioner's various filings is that he is limiting his ineffective assistance of counsel claim to the one stated in his amended petition. That claim can be reviewed on its merits because Petitioner presented it in his post-conviction petition

and appealed the denial of that claim all the way to the Ohio Supreme Court.  Thus, although the Court agrees that any assertion of ineffective assistance of trial counsel which was not raised in the post-conviction proceeding was defaulted, it does not perceive Petitioner to be raising any defaulted claims here.  Consequently, the Court will examine both of Petitioner's grounds for relief on their merits, and, because they raised related issues - namely, the viability of his *Brady* claim - will consider them together.

## IV.  The Merits

### A.  The AEDPA

A state prisoner's claims for habeas corpus relief are governed by the Antiterrorism and Effective Death Penalty Act of 1995 (the AEDPA), which amended the habeas corpus statute by including a standard of review that gives significant deference to the decisions made by the state courts on the constitutional issues raised in a habeas corpus petition.  As this Court has said, the provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104–132, 110 Stat. 1214 (AEDPA) govern the scope of this Court's review. *See Penry v. Johnson,* 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008). AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law,

or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that "[t]he focus ... is on whether the state court's application of clearly established federal law is objectively unreasonable ... an unreasonable application is different from an incorrect one." To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, ––– U.S. ––––, ––––, 132 S.Ct. 26, 27 (2011), quoting *Harrington v. Richter*, 562 U.S. ––––, ––––, 131 S.Ct. 770, 786–88 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S.Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 50 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination

11

that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

### B.  Grounds One and Two

Both of these grounds for relief rest on the same premise: that the prosecutor withheld exculpatory evidence in violation of the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), and that Petitioner was prejudiced by that action.  According to Petitioner, the evidence (recordings of conversations between himself and Mr. Musleh) would have corroborated the fact that the two met on the day in question not in order to purchase cocaine, but because Mr. Musleh promised to pay Petitioner a part of the debt he owed him, and that Petitioner was therefore entrapped into the meeting on a false premise, making the subsequent cocaine purchase the product of that entrapment.  When Petitioner's counsel failed to follow up with discovery and did not obtain this evidence, and when counsel then failed to present this theory to the jury and ask for an entrapment instruction, he was, according to Petitioner, falling short of his constitutional duty effectively to represent Petitioner at trial.

As noted, this Court does not review such a claim *de novo*, but must determine whether the state courts applied well-established federal constitutional principles to the claim in way that was either contrary to, or an unreasonable interpretation of, those principles as explained by the United States Supreme Court.  Consequently, any analysis

of the merits of Petitioner's claims must begin with an examination of the relevant state court decision - in this case, the September 24, 2013 decision of the Tenth District Court of Appeals. There, the court disposed of Petitioner's claims in this fashion:

> In his petition, appellant initially raised a claim that the state had improperly withheld audiotapes of conversations between him and Musleh. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To prove a *Brady* violation, a defendant must establish that: (1) the prosecution withheld evidence; (2) the defense was not aware of the evidence; and (3) the evidence withheld was material and exculpatory. *State v. Monroe*, 10th Dist. No. 04AP–658, 2005–Ohio–5242, ¶ 17, citing *State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph four of the syllabus, and *U.S. v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).
>
> Appellant's petition did not set forth sufficient operative facts to establish substantive grounds for his *Brady* claim. First, a *Brady* violation involves the post-trial discovery of information that was known to the prosecution, but unknown to the defense. *See Agurs* at 103; *State v. Wickline*, 50 Ohio St.3d 114, 116, 552 N.E.2d 913 (1990); *State v. Tucker*, 8th Dist. No. 98685, 2013–Ohio–2527, ¶ 34; *State v. Summers*, 11th Dist. No.2011–A–0040, 2012–Ohio–4457, ¶ 25; *State v. Summerall*, 10th Dist. No. 03AP–1024, 2004–Ohio–6599, ¶ 44. As the trial court found, "[w]hile it can be assumed that [appellant] was not aware that his conversations with Musleh were being recorded by government investigators, he certainly was aware of the contents of those conversations since he participated in them." ®. 301, at 6.) Appellant's knowledge of the content of the conversations is supported by his affidavit attached to his petition for postconviction relief, which emphasized that Musleh repeatedly told him that Musleh would give appellant the $4,500 that he owed him if appellant met him on March 5.
>
> Second, the evidence was neither exculpatory nor material. " 'Exculpatory evidence' is defined as evidence favorable to the accused which, 'if disclosed and used effectively, * * * may make the difference between conviction and acquittal.' " *State v. Rowe*, 92 Ohio App.3d 652, 666, 637 N.E.2d 29 (10th Dist.1993), quoting *U.S. v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Summers* at ¶ 25. "Evidence is considered material 'if there is a

13

reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *State v. Ketterer*, 126 Ohio St.3d 448, 935 N.E.2d 9, 2010–Ohio–3831, ¶ 23, quoting *Bagley* at 682. The touchstone of materiality is a "reasonable probability" of a different result. *State v. Norman*, 10th Dist. No. 12AP–505, 2013–Ohio–1908, ¶ 55, 992 N.E.2d 432. " 'The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.' " *Id.*, quoting *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

In his petition, appellant claimed that the withheld audio recordings would have established that the only reason he met with Musleh on March 5, 2009 was that Musleh promised to repay him the $4,500 that he owed to appellant, which would have established an affirmative defense of entrapment. Entrapment is an affirmative defense so, the defendant bears the burden to establish it by a preponderance of the evidence. *State v. Daniels*, 10th Dist. No. 09AP–976, 2010–Ohio–3745, ¶ 24. "The defense of entrapment is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." *State v. Doran*, 5 Ohio St.3d 187, 449 N.E.2d 1295 (1983), paragraph one of the syllabus.

Entrapment is not established, however, "when government officials ' "merely afford opportunities or facilities for the commission of the offense"' and it is shown that the accused was predisposed to commit the offense." *Doran* at 192, 449 N.E.2d 1295, quoting *Sherman v. U.S.*, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). The following factors are pertinent to the issue of whether a criminal defendant is predisposed to commit an offense: (1) the accused's previous involvement in criminal activity of the nature charged; (2) the accused's ready acquiescence to the inducements offered by the police; (3) the accused's expert knowledge in the area of the criminal activity charged; (4) the accused's ready access to contraband; and (5) the accused's willingness to involve himself in criminal activity. *Doran* at 192, 449 N.E.2d 1295.

As detailed in the trial court's decision denying appellant's petition for postconviction relief, the evidence adduced at trial indicates that the withheld audio recordings, even assuming they could be considered exculpatory, were immaterial because appellant's predisposition to commit

14

the drug offense negated any potential entrapment defense:

> Here, [appellant] had previously used cocaine with Musleh. [Appellant] knew the source of the cocaine. [Appellant] directed Musleh to several locations before finally taking him to his source of the drug. [Appellant] "snorted" cocaine during the return trip following the purchase. [Appellant] had sold cocaine to Musleh on previous occasions. There is no evidence that [appellant] was reluctant to arrange the sale of cocaine. The audio recording of the conversation between [appellant] and Musleh while in Musleh's car showed [appellant's] knowledge of cocaine trafficking. Thus, even if there were evidence that the recordings of telephone conversations between Musleh and [appellant] actually contained a promise by Musleh to repay money [appellant] now claims was owed to him, the totality of the evidence shows no "reasonable probability" that the result of the trial would be different.

(®. 301, at 5.)

In fact, if obtaining the promised $4,500 that was purportedly owed to him had actually been the sole or primary motivation for appellant to have met with Musleh on March 5, 2009, the evidence rebuts this claim because appellant ended up engaging in the cocaine purchase with Musleh without even asking for or receiving this money.

Therefore, appellant received a fair trial and his petition and attached affidavit failed to set forth sufficient operative facts to support his first claim of a *Brady* violation.

*State v. Zeune*, 2013 WL 5406895, *4-6.

There are two key parts to this holding. The first is that the evidence, even if it was exculpatory, was not improperly withheld because it was not "unknown to the defense" - that is, Petitioner was fully aware that he and Mr. Musleh had these conversations, even if he did not know that law enforcement officials had recorded them. The second is that the evidence was insufficient, as a matter of law, to establish the defense of entrapment

given the other evidence of record, particularly that Petitioner and Mr. Musleh had used cocaine together before, that Petitioner was the one who was aware of the source of supply, and that Petitioner never asked Mr. Musleh for the $4,500 at any time when they were together on the day in question.  The Court examines this latter conclusion first.

The state court began its analysis of this issue by referring to *State v. Rowe*, 92 Ohio App.3d 652, 666 (Franklin Co. 1993), which, in turn relied on *United States v. Bagley*, 473 U.S. 667 (1985).  *Bagley*, which provided additional guidance about *Brady*, noted that the purpose behind the *Brady* rule was to ensure that a criminal defendant was not deprived of the right to a fair trial, which is one of the guarantees found in the Due Process Clause of the Fifth and Fourteenth Amendments.  A *Brady*-type due process violation occurs when the evidence which the prosecution failed to turn over was "material," meaning that "its suppression undermines confidence in the outcome of the trial."  *Bagley*, 473 U.S. at 678. The Supreme Court further held in *Bagley* that use of the "prejudice" standard announced in  *Strickland v. Washington, supra,* was the appropriate way to analyze whether the prosecutor's failure undermined confidence in the outcome.  Under that standard, a defendant carries the burden of demonstrating materiality if he or she can show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id*. at 682. The state court in Petitioner's case therefore identified and applied the correct standard to the second aspect of his *Brady* claim; therefore, the question this Court must answer is whether it did so unreasonably, or in a way that no fair-minded jurist would have done in light of clearly established

federal law.

The answer to this question turns on the reasonableness of the state court's conclusion that the evidence withheld by the prosecutor would not have aided Petitioner in making a case for entrapment.  If, even with this evidence, a jury could not have determined that he was entrapped, then the absence of the evidence had no effect on the outcome of the trial.

Again, the state court began its analysis by citing to a state decision, *State v. Doran*, 5 Ohio St.3d 187 (1983), which also relied on a decision of the United States Supreme Court, *Sherman v. United States*, 356 U.S. 369 (1958).  In *Sherman*, which was a drug trafficking case like this one, the Supreme Court first noted that "[t]he function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime," *id*. at 372.  It then held that "[t]o determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." *Id*. at 373.  There, the evidence established that the defendant, a recovering addict, was cajoled into engaging in a narcotics transaction by the government's witness and informer, who himself procured the source for the narcotics and persuaded the defendant to resume his habit.  Further, there was no evidence that the defendant was predisposed to commit the crime; he had some prior convictions, but, as the Supreme Court pointed out, "a nine-year-old sales conviction and a five-year-old possession conviction are insufficient to prove petitioner had a readiness to sell narcotics." *Id*. at 375.  The principles to be drawn from this decision, and the ones the

state court of appeals drew, are that "a valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988).

After identifying the correct legal principles, the state court focused its analysis on the element of predisposition, indicating that five factors were relevant to deciding if that element had been established: "(1) the accused's previous involvement in criminal activity of the nature charged; (2) the accused's ready acquiescence to the inducements offered by the police; (3) the accused's expert knowledge in the area of the criminal activity charged; (4) the accused's ready access to contraband; and (5) the accused's willingness to involve himself in criminal activity." Federal cases may state these factors somewhat differently. *See, e.g., United States v. Al-Cholan*, 610 F.3d 945 (6th Cir. 2010), describing the relevant factors as "[t]he character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducements or persuasion; and the nature of the inducement or persuasion supplied by the Government," quoting *United States v. Moore*, 916 F.2d 1131, 1137 (6th Cir. 1990) (quoting *United States v. McLernon*, 746 F.2d 1098, 1112 (6th Cir. 1984)). Nonetheless, they are sufficiently similar to preclude any claim that the state court misunderstood or mis-stated clearly established federal law with respect to how a claim of entrapment is

18

analyzed.  Using those factors, the state court rejected Petitioner's claim that the withheld evidence would have created a sufficient issue concerning entrapment to justify a jury instruction, relying on the trial court's factual findings that the evidence demonstrated a past propensity to purchase and use cocaine with Mr. Musleh, the fact that it was Petitioner, and not Mr. Musleh, who was familiar with the supplier, and the fact that Petitioner used some of the cocaine that day, all while not asking Mr. Musleh for the money which was supposed to have been the inducement for the two to meet up on that day. These factual findings are binding on this Court.  *See* 28 U.S.C. §2254(e)(1).  The Court cannot say that the state court reached an unreasonable conclusion given these facts.

Under federal law, "[t]he defendant has the burden of producing evidence of both inducement and non-predisposition to commit the crime" and "the trial court should not instruct on entrapment unless the defendant has presented evidence on both prongs of the defense." *United States v. Wright*, 921 F.2d 42, 44 (3d Cir. 1990).  There, the court upheld the refusal to give an entrapment instruction because the defendant produced no evidence of a reluctance to enter into the cocaine transaction at issue.  That is essentially what the state courts did here, and in the absence of any evidence of threats made to Petitioner to induce him to lead Mr. Musleh to his supplier (*see, e.g., United States v. Gurolia*, 333 F.3d 944 (9th Cir. 2003)), or evidence of repeated attempts to persuade Petitioner to commit this crime, coupled with his outright refusal on at least one occasion to do so (*see, e.g., United States v. Ryan*, 333 F.3d 944 (11th Cir. 2002), reasonable jurists could have concluded, as the state court did, that Petitioner had not carried his burden of introducing evidence of lack of

19

predisposition, nor would he have been able to do so even with evidence that he agreed to meet with Mr. Musleh initially because he thought he was going to get some money. The issue here is not why the two men met up, but whether, once Mr. Musleh suggested that they obtain some cocaine, there would have been any evidence that Petitioner was reluctant to do so or in some way not predisposed to commit that crime.  Since the state courts determined this issue reasonably in keeping with well-settled federal law principles, this Court is not free to second-guess that decision.

As it turns out, this is also dispositive of Petitioner's ineffective assistance of counsel claim.  Since the same legal standard is used to define "materiality" for purposes of the *Brady* claim and prejudice for purposes of the ineffective assistance of counsel claim, if the state court did not unreasonably determine that the withheld information was material, Petitioner did not suffer any legal prejudice from his attorney's failure to procure it, however unreasonable that action may have been (even if, as Petitioner alleges, his attorney's failure was caused by putting his relationship with the prosecutor ahead of his loyalty to his client).  While such conduct cannot be condoned, the *Strickland* inquiry has two prongs, and only one of them focuses on the propriety of counsel's conduct.  A habeas petitioner must still demonstrate that, but for counsel's misconduct, the outcome of the trial might have been different.  The state courts concluded that Petitioner did not make that showing.  This Court cannot say that was unreasonable.  Under the AEDPA, that ends the inquiry.

## V.  Recommended Disposition

20

Based on the above discussion, it is recommended that the petition be denied, that the motion for an evidentiary hearing be denied, and that this action be **DISMISSED**.

## VI.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).


/s/ Terence P. Kemp
United States Magistrate Judge